## STATE OF CONNECTICUT *v.* DANIEL CASTRO (10158)

HEALEY, PARSKEY, SHEA, DANNEHY and SANTANIELLO, Js.

Argued December 6, 1984—decision released June 4, 1985

*Erskine D. McIntosh,* assistant public defender, with whom, on the brief, were *Michael R. Sheldon, Joette Katz* and *Temmy A. Pieszak,* for the appellant (defendant).

*Michael Dearington,* chief assistant state's attorney, with whom, on the brief, were *Arnold Markle,* state's attorney, *Julia D. Dewey,* assistant state's attorney, and *Jon Bain,* legal intern, for the appellee (state).

SANTANIELLO, J. The defendant was convicted of felony murder in violation of General Statutes § 53a-54c.[1]

---

[1] "[General Statutes] Sec. 53a-54c. FELONY MURDER. A person is guilty of murder when, acting either alone or with one or more persons, he commits or attempts to commit robbery, burglary, kidnapping, sexual assault in the first degree, sexual assault in the first degree with a firearm, sexual

422

He appeals, claiming that the trial court erred (1) in restricting his cross-examination of a witness in violation of his constitutional right to confrontation, and (2) in failing to instruct the jury on lesser included homicides pursuant to General Statutes § 53a-45 (c).[2]

The jury could reasonably have found the following facts. The incident which led to the defendant's arrest took place on October 19, 1978. The defendant left his home at approximately 10:30 a.m., drove to a package store, and purchased a pint bottle of vodka, which he consumed in his car during the course of the morning. Prior to 1 p.m., the defendant purchased a second half pint of vodka, which he partly consumed while sitting in the car by himself. Around 1 p.m. he met his friend, Hector Soto, whom he invited for a drive. Before entering the car, Soto walked to the side of a building and picked up his shotgun. The defendant also had a sawed-off shotgun under the driver's seat of his car, where it had been for about ten months. The defendant told Soto that he had been stopped earlier that morning by a police officer and was asked for some identification while he was standing at the corner of Grand Avenue and Lloyd Street in New Haven. He claimed to be partially drunk at that time. The police

assault in the third degree, sexual assault in the third degree with a firearm, escape in the first degree, or escape in the second degree and, in the course of and in furtherance of such crime or of flight therefrom, he, or another participant, if any, causes the death of a person other than one of the participants, except that in any prosecution under this section, in which the defendant was not the only participant in the underlying crime, it shall be an affirmative defense that the defendant: (A) Did not commit the homicidal act or in any way solicit, request, command, importune, cause or aid the commission thereof; and (B) was not armed with a deadly weapon, or any dangerous instrument; and (C) had no reasonable ground to believe that any other participant was armed with such a weapon or instrument; and (D) had no reasonable ground to believe that any other participant intended to engage in conduct likely to result in death or serious physical injury."

[2] A third claim of error concerning ex parte communications between the trial judge and the jury foreman was withdrawn prior to oral argument.

had confiscated his marijuana which they found close to where the defendant was standing. The defendant had denied ownership of the marijuana and was not arrested for possession. At trial, the defendant testified that he "dealt in drugs," and that he had others selling marijuana for him. As a result of the loss of the marijuana, the defendant told Soto that "he needed some money . . . [b]ecause they took his reefer." The defendant then shared the remaining vodka with Soto and smoked some marijuana while they drove around for approximately twenty-five minutes. A third half pint of vodka was purchased around 4 p.m., which they shared.

At 5 p.m. the defendant and Soto drove by the intersection of Grand Avenue and Lloyd Street. This intersection was frequented by drug dealers. The defendant stopped the car, got out and walked up to a group of six or seven men and announced: "I need money; give up the money." The defendant repeated in Spanish to the victim, Lucas Rivera, who was one of the group, that "it was a robbery," and pointed his sawed-off shotgun at his head. When the victim pushed the gun away, the defendant again aimed the gun at the head of the victim and pulled the trigger, fatally wounding him. The defendant and Soto then got into the car and fled the scene.

Immediately after the killing, the defendant traded his car and some furniture for another car and left New Haven, driving to Buffalo, New York. He was accompanied by Soto. The defendant spent six days in Buffalo, where he sold the murder weapon. Five days after his return to New Haven the defendant was arrested. After being informed of his Miranda rights, he confessed to the killing.

The defendant was indicted by a grand jury for felony murder, General Statutes § 53a-54c. The evidence at

trial showed that during the course of the day the defendant had consumed a large amount of alcohol, and had taken an acid pill, snorted cocaine, and smoked eight or nine marijuana cigarettes. At least one witness testified that the defendant was unsteady on his feet, had slurred speech, and appeared to be feeling the effects of the combination of alcohol and drugs. The defendant was convicted as charged by a jury of twelve and sentenced to a term of ten years to life. After his motions for judgment of acquittal and for a new trial were denied by the court, he filed this appeal.

I

The defendant's first claim of error is that the trial court, by limiting the scope of cross-examination of a state's witness, violated his sixth amendment right of confrontation. The defendant attempted to question Frank Santiago, a witness to the killing, concerning alleged threatening behavior against Santiago by Hector Soto. After the murder, Soto had been seen on numerous occasions driving by Santiago's house, and at one point he approached Santiago in his car. It is the defendant's contention that "had [he] had the opportunity [he] could have established that Mr. Santiago felt that this threatening was orchestrated by the defendant, thereby developing a prejudice and a bias against the defendant."

"The general rule is that restrictions on the scope of cross-examination are within the sound discretion of the trial judge . . . but this discretion comes into play only after the defendant has been permitted cross-examination sufficient to satisfy the sixth amendment." (Citations omitted.) *State* v. *Gaynor,* 182 Conn. 501, 508, 438 A.2d 749 (1980); see *State* v. *Thompson,* 191 Conn. 146, 148, 463 A.2d 611 (1983). We must therefore conduct a two-step analysis, determining first whether the cross-examination of Santiago permitted

to defense counsel comported with sixth amendment standards; see *Davis* v. *Alaska,* 415 U.S. 308, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974); and second whether the trial court abused its discretion in restricting the scope of that cross-examination. *State* v. *Gaynor,* supra, 510.

"The constitutional standard is met when defense counsel is 'permitted to expose to the jury the facts from which the jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness.' *Davis* v. *Alaska,* supra, 318; *United States* v. *Vasilios,* [598 F.2d 387, 389 (5th Cir. 1979)]." *State* v. *Gaynor,* supra, 509. In this case the defendant clearly had sufficient opportunity to cross-examine Santiago fully and to attempt to discredit him before the jury. The trial court permitted extensive cross-examination of Santiago concerning the shooting incident, and also allowed the defendant to pursue a line of questioning in an attempt to show that Santiago had made prior inconsistent statements before the grand jury. The only aspect of the cross-examination restricted by the trial court involved the alleged threats against Santiago by Soto, which the court found too speculative to put before the jury. Under these circumstances, we cannot say the defendant's sixth amendment right to confront Santiago was abrogated.

The remaining question is whether the trial court abused its discretion in refusing to allow Santiago to be questioned concerning the alleged threats. Although defense counsel had put forward several offers of proof concerning the alleged threatening behavior of Soto toward Santiago, the trial court rejected the defendant's theory as speculative, and beyond the scope of direct examination. The defendant is claiming that because Santiago's testimony was crucial to the state's case, the jury should have been exposed to any evidence which tended to show Santiago's bias.

" 'To establish an abuse of discretion, [the defendant] must show that the restrictions imposed upon [the] cross-examination were clearly prejudicial.' *United States* v. *Elliott,* 571 F.2d 880, 909 (5th Cir. 1978); *Gordon* v. *United States,* 438 F.2d 858, 865 (5th Cir. 1971)." *State* v. *Gaynor,* supra, 510; see *State* v. *Shindell,* 195 Conn. 128, 141, 486 A.2d 637 (1985). Once it is established that the trial court's ruling on the scope of cross-examination is not constitutionally defective, this court will apply "[e]very reasonable presumption . . . in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion." *State* v. *Briggs,* 179 Conn. 328, 333, 426 A.2d 298 (1979), cert. denied, 447 U.S. 912, 100 S. Ct. 3000, 64 L. Ed. 2d 862 (1980).

The facts as established at trial do not support the defendant's claim of prejudice, since the testimony of Santiago was cumulative to the testimony of several other witnesses, including the defendant. In the most substantive portion of Santiago's testimony he identified the defendant and the victim, and detailed the demand for money and the subsequent shooting. Both Jose Ramos, a defense witness, and Hector Soto identified the defendant and both further testified that the defendant killed Lucas Rivera, giving detailed accounts of the use of the murder weapon and of the defendant's demeanor and possible intoxication. They further corroborated the hold-up language used by the defendant. The defendant also testified at great length regarding the incident and admitted that he killed Lucas Rivera. This testimony replicated that given by Santiago. The defendant was not, therefore, prejudiced by the trial court's refusal to allow cross-examination on the claimed threats of Soto toward Santiago.

## II

At trial, the defendant made a timely request that the court charge the jury on lesser homicides, includ-

ing manslaughter, pursuant to General Statutes § 53a-45 (c). The trial court denied the request. Following his conviction the defendant moved for a new trial, basing his motion in part on the court's refusal to give the instruction. The defendant's second claim of error is from the denial of that motion.

General Statutes § 53a-45 (c) provides that "[t]he court or jury before which any person indicted for murder . . . is tried may find him guilty of homicide in a lesser degree than that charged." The application of this statute to murder trials is governed by the principles set down by this court in *State* v. *Whistnant,* 179 Conn. 576, 427 A.2d 414 (1980). In *Whistnant* we held that "[a] defendant is entitled to an instruction on a lesser offense . . . only if, the following conditions are met: (1) an appropriate instruction is requested by either the state or the defendant; (2) it is not possible to commit the greater offense, in the manner described in the information or bill of particulars, without having first committed the lesser; (3) there is some evidence, introduced by either the state or the defendant, or by a combination of their proofs, which justifies conviction of the lesser offense; and (4) the proof on the element *or* elements which differentiate the lesser offense from the offense charged is sufficiently in dispute to permit the jury consistently to find the defendant innocent of the greater offense but guilty of the lesser." *State* v. *Whistnant,* supra, 588. There is no dispute in this case that the first condition of *Whistnant* was satisfied. The defendant's claim of error focuses on the second *Whistnant* requirement, and therefore indirectly on the third and fourth requirements, that the offenses contained in the jury instructions be lesser included offenses of the crime charged.

The *Whistnant* test was specifically made applicable to the crime of murder, and the lesser included manslaughter offenses in *State* v. *Rodriguez,* 180 Conn. 382,

407–408, 429 A.2d 919 (1980). "For purposes of the second condition of *Whistnant* . . . an offense that would be a lesser included offense but for its requirement of a less culpable state of mind than that required for the greater, will be deemed a lesser included offense." *State* v. *Rodriguez,* supra, 407. Under *Rodriguez,* a defendant is entitled to have the jury charged on any lesser included offenses of murder which meet the three additional requirements of *Whistnant.*

" 'The test for determining whether one violation is a lesser included offense in another violation is whether it is possible to commit the greater offense . . . without having first committed the lesser. . . . [T]o require an instruction on a lesser included offense, the lesser offense must not require any element which is not needed to commit the greater offense . . . . ' [Citations omitted.]" *State* v. *Troynack,* 174 Conn. 89, 97, 384 A.2d 326 (1977). In the present case the defendant requested that the jury be charged on the lesser included offenses of first and second degree manslaughter. The defendant has conceded, as he must, that these offenses clearly do not meet the second condition of *Whistnant.*

In both lesser degrees of manslaughter the state must prove that the defendant possessed a culpable state of mind. Manslaughter in the first degree requires a showing that the defendant had the "intent to cause serious physical injury." General Statutes § 53a-55. Manslaughter in the second degree requires proof that a killing was committed "recklessly." General Statutes § 53a-56. In contrast, the felony murder statute contains no such mens rea element. *State* v. *Valeriano,* 191 Conn. 659, 662, 468 A.2d 936 (1983).

In order to obtain a conviction for felony murder the state must prove, beyond a reasonable doubt, all the

elements of the statutorily designated underlying felony, and in addition, that a death was caused in the course of and in furtherance of that felony. General Statutes § 54a-54c. There is no requirement that the state prove an intent to cause death. Since both first and second degree manslaughter require the showing of a culpable state of mind, manslaughter is not a lesser included offense of felony murder. *State* v. *MacFarlane*, 188 Conn. 542, 547–49, 450 A.2d 374 (1982).

Although the defendant concedes that the *Whistnant* test generally controls an accused's right to have the jury charged on lesser included offenses he argues that it should not be applied to the crime of felony murder. He claims that to do so would derogate legislative intent and violate numerous constitutional principles. This court analyzed and rejected a similar claim in *State* v. *MacFarlane,* supra, wherein we stated: "The constitutionality of instructing on lesser included offenses is grounded on the premise that where one or more offenses are lesser than and included within the crime charged, notice of the crime charged includes notice of all lesser included offenses. *State* v. *Martin,* 187 Conn. 216, 219, 445 A.2d 585 (1982); *State* v. *Rodriguez,* supra, 402, 405; see *State* v. *Maselli,* 182 Conn. 66, 71, 437 A.2d 836 (1980), cert. denied, 449 U.S. 1083, 101 S. Ct. 868, 66 L. Ed. 2d 807 (1981). This notice permits each party to prepare a case properly, each cognizant of its burden of proof. When the second condition for a lesser included offense instruction is not met, we cannot presume that the state has had sufficient opportunity to prove each element of the lesser offense beyond a reasonable doubt." *State* v. *MacFarlane,* supra, 548–49. We therefore decline the defendant's suggestion that we remove felony murder from the scope of the *Whistnant* rule.

There is no error.

In this opinion the other judges concurred.