[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON STATE'S MOTION TO TRANSFER TO REGULAR CRIMINAL DOCKET
In this proceeding, the court must decide whether the case of Enrique S., Jr. should be transferred to the regular criminal docket pursuant to General Statutes, Sec. 46b-127. That statute reads in pertinent part as follows: "The court shall transfer to the regular criminal docket of the superior court from the docket for juvenile matters: (1) Any child referred for the commission of a murder under sections53a-54a to 53a-54d, inclusive, provided any such murder was committed after such child attained the age of fourteen years . . . . No such transfer shall be valid unless, prior thereto, the court has made written findings, after a hearing, that there is probable cause to believe that the child has committed the act for which he is charged."
Enrique S., Jr. was arrested on a warrant issued on September 22, 1992 by the Honorable Howard J. Moraghan, presiding judge of the regular criminal docket at Danbury. CT Page 1825 Thereafter, the matter was transferred to the juvenile docket and a petition was filed on September 23, 1992, alleging two counts of murder.
(a) In violation of Connecticut General Statutes, Sec.53a-54c, FELONY MURDER, on September 10, 1992, in Danbury, acting with one or more people he committed or attempted to commit a robbery, and in the course of such robbery he or another participant caused the death of another person. No. 92 09 037.
(b) In violation of Connecticut General Statutes, Secs. 53a-8 to 53a-54a, AIDING MURDER, on or about September 10, 1992, in Danbury, he did aid another person, who, with intent to cause the death of another person, caused the death of such person. No. 92 09 037.
A hearing was conducted on November 6, 17, December 8 and 15, 1992, at which hearing witnesses[1] testified and documentary evidence[2] was presented. At the hearing, the State was represented by advocate, Attorney John H. Kearney, and Enrique S., Jr. was represented by Attorney Eugene Riccio.
From the testimonial and documentary evidence, the court finds the following facts were established:
A. The victim, Michael Samaha, died from a gunshot wound of the back and abdomen on September 11, 1992 at 4:55 A.M. at Danbury Hospital. (State Exhibit 7 — Autopsy Report.) The respondent, Enrique S., Jr., was born on June 4, 1978; therefore, he was fourteen years old on the date when the crime charged against him was committed. (State Exhibit 1 — Birth Certificate.) The death was caused by a bullet discharged from a .32 caliber Beretta semi-automatic pistol, which was operable (State Exhibit 3 — Firearms Report.) The murder occurred in an alleyway between Dimyan's Market and a package store on 112-116 Elm Street near the intersection of Beaver Street. (Defendant's Exhibit 12 — Sketch Map. )
In his investigation, Detective Fisher discovered that a small black pistol had been stolen sometime in July of 1992 from a gun cabinet at the home of Edward Crowe in Roxbury, Connecticut. His teenage daughter, Lori Crowe, recalled that CT Page 1826 she had a party at her home in July, and a Robert Smith, the respondent, and several other teenage friends attended on a night that her parents were away. Detective Fisher established that the serial number on the murder weapon matched the stolen pistol from the Crowe home. With this information, Detectives Fisher and Mahoney interviewed Robert Smith, a sixteen year old youth in the presence of his mother, who had gone to the July party with the respondent. In this four page written statement, signed on September 17, he confirmed having gone to this July party with Enrique S., Jr. and several other teenage friends. They had gone into the father's bedroom and taken a small black pistol out of his locked gun cabinet. (State Exhibit 5.) Each of them, including the respondent, handled the pistol. He stated having been shown this same pistol by Mr. Crowe on several prior occasions and was familiar with it. At the party, he had left the respondent and another youth in the bedroom after the pistol was put back in the cabinet. In August, he met the respondent who showed him a small black pistol, but denied taking it from the Crowe gun cabinet. The next day, he and his mother voluntarily returned to the Danbury police station to sign a two page statement in which he changed the prior statement in part stating that the respondent admitted stealing it from the Crowe home in July. He told Detective Mahoney that he wanted to set the matter straight. At the hearing, he testified that some of the facts in these two statements were false and now said that the police pressured him into making them. His testimony on the stand was that he never saw the respondent with this pistol after the July party and had never admitted to him of having taken it. Because of the obvious inconsistency between the prior written statements and his testimony, the State moved to introduce them as exhibits for substantive purposes under State v. Whelan, 200 Conn. 743 (1986) and State v. Grant,221 Conn. 93 (C.L.J. February 4, 1992). The court admitted both statements over the objection of the respondent's attorney. (State Exhibits 5 and 6.)
In both these cases, our Supreme Court has held that prior written signed statements inconsistent with a declarant's testimony are admissible for substantive purposes when they are based on personal knowledge of the witness and is subject to cross-examination as is the case here. Many of the facts in the two statements were consistent and based on the declarant's own personal knowledge. He had seen and CT Page 1827 handled this same pistol on several occasions before the July party and knew what it looked like. When the respondent showed it to him a month later and said he took it from the Crowe home, he believed it was the same pistol owned by Mr. Crowe.
He gave the two statements about a week following the murder in the presence of his mother. The court believes that he was stating the truth then, and finds that the respondent admitted having stolen the pistol from the Crowe home and it was this pistol which was used to murder Michael Samaha. The court did not believe that the police coerced him into making these statements, which were both made in the presence of his mother. The fact that he returned to the police station on September 18 with his mother to set the record straight negates against having been coerced, and the court finds they were made voluntarily.
The police investigation had implicated the respondent with the murder; therefore, Detectives Fisher and Mahoney went to his home on September 13 at about 10:00 P.M. to interview him. His parents told them that their son was out getting a haircut, but they would bring him to the police station when he returned. At about 10:00 P.M., the respondent and his father arrived, and the next fifteen minutes Detective Mahoney spoke to the father alone explaining that his son had been involved in this murder. For the next ten minutes, the father and the respondent son were left alone in the interview room according to Detective Mahoney. Then the father reported that his son was willing to discuss the case with him. The three of them went into the interview room. Detective Mahoney told the respondent he wanted only for him to tell the truth. If he cooperated by telling what happened and in finding the truth, he would convey his cooperation to the State's Attorney for his consideration. Both the respondent and the father asked "what consideration" would be given to him. Again, Detective Mahoney repeated that he would tell the State's Attorney of his cooperation if he would give him a statement of what happened, but made no other promises to them. Before he started interviewing him, Detective Fisher came into the room to advise both the father and the respondent of their Miranda rights and gave them a standard Miranda rights waiver form. After they both read the form and filled in the name and a few blanks at the top, the son signed it on a line at the CT Page 1828 bottom and initialed each of the five paragraphs. The father and Detective Mahoney also signed it alongside a notation of being witnesses. It was dated September 13, 1992 at 11:45 P.M. (State Exhibit 4.) After signing it, the respondent said, "I'll tell you what happened." He said of having been with Fred and Bassel Conn and they decided to take someone's money. They saw a white male that wanted to buy coke go into the alleyway near Elm Street and saw Fred and Bassel Conn follow him, and he was about three feet behind them. They took his money and shots were fired. He didn't know which one of them fired the shots because it was dark in the alley. He also said he wasn't sure which one owned the gun since both of them had it from time to time. Then he began to hedge. At that point, his father asked that the interview end because he wanted to speak to an attorney. The interview ended at about 11:45 P.M. (Defendant's Exhibit 6.)
The respondent's attorney moved to strike this testimony because the oral admission was in violation of Connecticut General Statutes, Sec. 46b-137. In pertinent part, it provides: "(a) Any admission, confession or statement, written or oral, by a child shall be inadmissible in any proceeding for delinquency . . . unless made by such child in the presence of his . . . parents . . . and after the parent . . . and the child have been advised (1) of the child's right to retain counsel . . . (2) of the child's right to refuse to make any statements and (3) that any statements he makes may be introduced into evidence against him." Section46b-137 requires that the parent be present with the child at the time such admission is made and both must knowingly and intelligently waive these rights. The respondent's attorney argued that this oral statement is inadmissible because the warning was not given to the father and that the father signed it only as a witness. This waiver is commonly known as a Miranda rights warning. Miranda v. Arizona, 384 U.S. 436,86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The State has the burden of proving by a preponderance of the evidence that the defendant knowingly and intelligently waived his Miranda rights. State v. Hernandez, 204 Conn. 377, 395, 528 A.2d 794
(1987). State v. Usry, 205 Conn. 298 (1987).
The respondent did not refute that Detectives Mahoney and Fisher had talked with the parents at their home earlier that evening advising that their son had been implicated in the murder. When the father brought the son to the station CT Page 1829 later that night, they both were told the purpose and reason why the son was being interviewed. They were given time to talk alone before the interview began. Detective Mahoney answered their question twice as to what he meant by giving him consideration with the State's Attorney in exchange for a statement of the true facts of what had happened. They both appeared to have then read the Miranda waiver before signing it and asked no further questions before making the oral admission. The court finds that both the father and the son read and understood that they had the right to an attorney and the right to remain silent before signing the waiver. The fact that the father stopped the interview right after the son made the admission of what had happened and requested to see an attorney clearly indicates to the court that he understood his Miranda rights. There was no evidence presented that either the respondent or his father did not read or understand English. From the totality of the circumstances, the court finds that they both understood their right to remain silent and the right to obtain or retain counsel. They both voluntarily and knowingly chose to waive those rights before making the oral admission. Therefore, the court accepts and believes that the respondent was a participant with Fred and Bassel Conn at the murder scene as he stated.
A. General Statutes, Sec. 53a-54c, FELONY MURDER, provides in material part that "[a] person is guilty of murder when, acting alone or with one or more persons, he commits or attempts to commit robbery . . . and, in the course of and in furtherance of such crime . . . causes the death of a person other than one of the participants. . . ." A person may be convicted of felony murder even though he had no intent to and did not personally kill the victim. State v. Castro, 196 Conn. 421, 429, 493 A.2d 223 (1985). At this juncture, the court is dealing only with probable cause which exists if the facts found are sufficient in themselves to warrant a person of reasonable caution to believe that Enrique S., Jr. has committed the crime of which he has been accused. In order to establish probable cause, it is not necessary to produce a quantum of evidence necessary to convict. See State v. Cobuzzi, 161 Conn. 371, 376 (1971), cert. denied, 404 U.S. 1017, 92 S.Ct. 677, 30 L.Ed.2d 664
(1972); State v. Kaplan, 20 Conn. App. 183, 186 (1989).
The elements for the State to prove probable cause for CT Page 1830 felony murder are: (1) the respondent and others committed or attempted to commit a robbery; (2) that the death of the victim was caused by the respondent or one of the other participants; and (3) that the respondent or one of the other participants caused the death in the course of and in the furtherance of the robbery. State v. Cobbs, 203 Conn. 4, 6
(1987). The predicate felony here was robbery. General Statutes, Sec. 53a-134(a), ROBBERY, provides, "A person is guilty of robbery in the first degree when, in the course of the commission of the crime . . . he or another participant in the crime: . . . (4) displays or threatens the use of . . . a pistol, revolver . . . or other firearm. . . ." The only requirement for corroboration in a felony murder after an admission is established is that the death of the victim is proven by independent evidence. See State v. Oliveras,210 Conn. 751 (1989) and State v. Usry, supra, 298.
Here the court has an admission from the respondent that he was a participant in the robbery with Fred and Bassel Conn on September 10 at the murder scene, that they forcibly attempted to take money from the victim, and one of the other participants fired two shots from a pistol he knew was in their possession. The victim died shortly thereafter as a result of a gunshot wound. The robbery and murder took place at the same time in the alleyway. The respondent was a participant by his own admission, and he had previously stolen the pistol used in this murder. He knew the other participants, and later the pistol came into the possession of one of them. From these facts, the court finds that there is probable cause to charge the respondent with felony murder under section 53a-54c of the Connecticut General Statutes.
B. In the second count of the petition, the respondent is charged with being an accessory to a murder under section53a-8 to section 53a-54a, AIDING MURDER. In 53a-54a(a), a person commits murder "when, with intent to cause the death of another person, he causes the death of such person or of a third person. . . ."
Accessorial liability exists when "[a] person, acting with the mental state required for the commission of an offense . . . solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense. . . ." General Statutes, Sec. 53a-8. General Statutes, Sec. 53a-8 does not define a separate and CT Page 1831 distinct crime, but only an alternate means by which the crime of murder may be committed. See In re Ralph M.,211 Conn. 289, 301 (1980). To secure a transfer to the regular criminal docket, the State had to establish probable cause that Enrique S., Jr. intended to aid the person who shot the pistol and in so aiding, that he intended to commit the crime of murder. Proof of the dual intent is necessary. State v. Foster, 202 Conn. 520, 525 (1987); State v. Fleming,198 Conn. 255, 271, cert. denied, 475 U.S. 1143, 106 S.Ct. 1797,90 L.Ed.2d 342 (1986); State v. Teart, 170 Conn. 332, 335
(1976).
General Statutes, Sec. 53a-8 provides that the accessory "may be prosecuted and punished as if he were the principal offender." For the purpose of determining criminal liability, there is no practical difference between an accessory and a principal. In re Ralph M., supra, 299.
While there is evidence that the respondent had provided the pistol used in the murder and was one of the participants in the robbery, the court does not find he had the necessary intent to commit murder. The court also does not find that an agreement existed between this respondent and the other participants to kill the victim. Therefore, the court does not find probable cause on this second count.
Since there is probable cause on the first count, the matter of Enrique S., Jr. is transferred to the regular criminal docket as required by General Statutes, Sec. 46b-127
for FELONY MURDER, Sec. 53a-54c of the Connecticut General Statutes.
Petroni, J.