### STATE OF CONNECTICUT v. DOMINGO PAREDES
(12346)

O'CONNELL, LANDAU and HEIMAN, Js.

Argued May 2—decision released August 9, 1994

*David A. Leff,* for the appellant (defendant).

*Mary H. Lesser,* assistant state's attorney, with whom, on the brief, were *John T. Redway,* state's attorney, and *Timothy J. Liston,* senior assistant state's attorney, for the appellee (state).

LANDAU, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of aiding another person in the transportation of narcotics with intent to sell in violation of General Statutes §§ 21a-278 (b)[1] and 53a-8.[2] He claims that the trial court improperly (1) refused to strike the direct testimony of a state's witness after she invoked her fifth amendment privilege, thereby depriving the defendant of his sixth amendment right to confront and cross-examine the witness as to her bias, motive and veracity,[3] (2) excluded evidence of the defendant's honesty and reputation for honesty, and (3) denied the defend-

---

[1] General Statutes § 21a-278 (b) provides in pertinent part: "Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any narcotic substance . . . and who is not at the time of such action a drug-dependent person, for a first offense shall be imprisoned not less than five years nor more than twenty years . . . ."

[2] General Statutes § 53a-8 provides in pertinent part: "(a) A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender."

[3] The fifth amendment to the United States constitution provides in pertinent part: "No person shall . . . be compelled in any criminal case to be a witness against himself . . . ."

The sixth amendment to the United States constitution provides in pertinent part: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ."

ant's motion for judgment of acquittal. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On December 6, 1991, Candida Cespedes and two friends met with "Benny" and "Brian" at a Burger King restaurant in Cromwell to discuss the logistics of a drug deal. Unbeknownst to Cespedes or her companions, Brian was an undercover police officer and Benny was an assisting informant. Cespedes agreed to procure one kilogram of cocaine to sell to Brian and Benny at the "going price" of $24,000. Between December 6 and December 9, 1991, Cespedes contacted the defendant, who agreed to provide the kilo of cocaine for the sale.

On December 9, 1991, the defendant brought the cocaine in a yellow plastic bag to Cespedes' residence in New York. Cespedes and the defendant then drove to the Cromwell Burger King, where they met Brian and Benny. Both the drug enforcement agency (DEA) and the Middletown police department were conducting a surveillance of the premises. In the Burger King parking lot, the defendant removed the bag of cocaine from his truck and handed it to Cespedes, who then handed it to Benny. The defendant was arrested at the scene shortly thereafter. After his conviction, this appeal followed.

I

The defendant first claims that the trial court improperly refused to grant his motion to strike the direct testimony of Cespedes after she invoked her fifth amendment privilege. The defendant asserts that the trial court's refusal deprived him of his sixth amendment right to confront and cross-examine Cespedes as to her bias, motive, and veracity. The state argues that the questions to which Cespedes invoked her fifth amendment rights concerned matters collateral to the

issues before the trier of fact. The state also posits that the defendant was permitted ample opportunity to explore Cespedes' bias, motive, and veracity. For both reasons, the state contends that the trial court correctly denied the motion to strike Cespedes' direct testimony.

The following additional facts are necessary for the resolution of this issue. At trial, Cespedes testified on direct and redirect examination on behalf of the state for two days. The defendant cross-examined her at length on the same two days with regard to several matters that implicated her bias, motive, and veracity. Initially, Cespedes testified concerning her plea bargain with the state. She was charged originally with two crimes that, upon conviction, subjected her to possible imprisonment for forty years with a five year mandatory minimum. In return for testifying against the defendant, Cespedes was charged with only one crime with a possible fifteen year maximum and no mandatory minimum sentence. Cespedes' sentencing was postponed until after she testified against the defendant and she acknowledged that the prosecutor would inform the sentencing judge of her assistance in this case. Cespedes also admitted that, having already been in jail for fourteen months and having young children at home, she hoped to receive a more lenient sentence.

The defendant also cross-examined Cespedes with regard to her drug addiction. She testified that at the time of her arrest, she had been addicted to cocaine and was a user of marijuana. Her long-term addiction caused her to use cocaine several times a day and adversely affected her care of her children.

Cespedes also testified that she lied to the police at the time of her arrest as to her use of drugs. Finally, she admitted that she did not tell a probation officer that she was to receive money, as opposed to just drugs,

for her part in the December 9 drug deal because she believed that it would appear more favorable to the judge.

When asked on cross-examination whether she had ever dealt with Benny prior to the transaction in question, Cespedes requested to speak with her attorney. The jury was excused and a voir dire conducted. The trial court determined that certain questions could be posed to Cespedes and that, if she invoked her fifth amendment privilege, she must do so in the presence of the jury. Further, the jury would be instructed that it could draw an adverse inference from Cespedes' refusal to answer.

Cespedes exercised her fifth amendment right in response to questions directed at two general matters: (1) whether she had ever met or dealt with Benny prior to the transaction at issue; and (2) whether she had otherwise ever sold or distributed drugs.[4] Despite the fact that Cespedes was allowed to invoke her privilege with regard to whether she knew or had dealt with Benny prior to the incident in question, the defendant nevertheless established through cross-examination that Cespedes had met Benny in September, 1991.

In closing argument, counsel for the defendant strongly argued the adverse inferences that the jury was permitted to draw from Cespedes' invocation of her fifth amendment privilege. Specifically, defense

---

[4] Cespedes exercised her fifth amendment right when asked the following questions on cross-examination: (1) "During the period of 1991, did you sell or distribute drugs to anyone, other than on the occasion of December, 1991?" (2) "Did you receive drugs in 1991, from anyone whom you distributed—at whom you distributed? [sic]" (3) "Okay. Without telling us what the conversations were about, have you ever had a conversation with Benny, before December 5, 1991?" (4) "So the first time you spoke to Benny was December 5, 1991?" (5) "You already knew Benny, correct?" (6) "And had you had any more communication with Benny after that summertime or September meeting, until the call of December 5, 1991?"

counsel detailed the manner in which such inferences could impact on Cespedes' bias, motive, and veracity.

The trial court's refusal to strike Cespedes' direct testimony after she invoked her fifth amendment privilege did not deprive the defendant of his sixth amendment rights. "The primary interest secured by the confrontation clause of the sixth amendment is the right to cross-examination; *Douglas* v. *Alabama*, 380 U.S. 415, 418, 85 S. Ct. 1074, 13 L. Ed. 2d 934 (1965) . . . ." (Internal quotation marks omitted.) *State* v. *Lee*, 229 Conn. 60, 69, 640 A.2d 553 (1994). The sixth amendment is satisfied when the defendant is "permitted to expose to the jury the facts from which the jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness." *Davis* v. *Alaska*, 415 U.S. 308, 318, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974); *State* v. *Castro*, 196 Conn. 421, 425, 493 A.2d 223 (1985).

"The confrontation right, however, is not absolute and is subject to reasonable limitation. *State* v. *Vitale*, 197 Conn. 396, 401, 497 A.2d 956 (1985)." *State* v. *Lewis*, 220 Conn. 602, 621, 600 A.2d 1330 (1991); see also *State* v. *Lee*, supra, 229 Conn. 70–71. "We have consistently held that when an accused has had the opportunity to elicit evidence of bias, not every limitation of the right to cross-examine is of constitutional dimension. The extent of cross-examination beyond that necessitated by the constitution rests within the discretion of the trial court." *State* v. *Lewis*, supra, 621–22.[5] Therefore, we must determine whether the trial court abused its discretion in this case.

---

[5] In this sense, the test to determine whether the scope of cross-examination has been impermissibly restricted is bipartite. Our courts first determine whether the defendant's cross-examination satisfied the sixth amendment standards as enunciated in *Davis* v. *Alaska*, supra, 415 U.S. 318. After this threshold question has been answered in the affirmative, the general rule is that further restrictions on the scope of cross-examination

The sixth amendment right of the criminal defendant can conflict with the fifth amendment right of a witness not to answer certain questions posed on cross-examination.[6] "If a defendant's cross-examination is restricted by the competing fifth amendment right of a witness, it may be necessary to strike the direct testimony of that witness." *Dunbar* v. *Harris,* 612 F.2d 690, 692 (2d Cir. 1979); *State* v. *Roma,* 199 Conn. 110, 116, 505 A.2d 717 (1986). "In determining whether a defendant's right of cross-examination has been unduly restricted, we consider the nature of the excluded inquiry, whether the field of inquiry was adequately covered by other questions that were allowed, and the overall quality of the cross-examination viewed in relation to the issues actually litigated at trial." *State* v. *Roma,* supra, 116.

"The extreme sanction of striking the testimony of a witness should be resorted to only where the invocation of the privilege blocks inquiry into matters directly relating to the crime charged and not those which are merely collateral, such as the subjects of the cross-examination for credibility in this case. *State* v. *Valeriano,* 191 Conn. 659, 666–67, 468 A.2d 936 (1983), cert. denied, 466 U.S. 974, 104 S. Ct. 2351, 80 L. Ed. 2d 824 (1984); *United States* v. *Seifert,* 648 F.2d 557, 561 (9th Cir. 1980) . . . . Where the privilege has been

are within the sound discretion of the trial judge. See *State* v. *Castro,* supra, 196 Conn. 424–25. "To establish an abuse of discretion, [the defendant] must show that the restrictions imposed upon [the] cross-examination were clearly prejudicial. . . . Once it is established that the trial court's ruling on the scope of cross-examination is not constitutionally defective, this court will apply [e]very reasonable presumption . . . in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion." (Citations omitted; internal quotation marks omitted.) Id., 426.

[6] The propriety of Cespedes' invocation of the fifth amendment is not at issue in this appeal. The question is whether the trial court's refusal to strike Cespedes' testimony after she invoked her fifth amendment right deprived the defendant of his sixth amendment right.

invoked as to purely collateral matters, there is little danger of prejudice to the defendant and, therefore, the witness' testimony may be used against him. *United States* v. *Cardillo,* 316 F.2d 606, 611 (2d Cir.), cert. denied, 375 U.S. 822, 84 S. Ct. 60, 11 L. Ed. 2d 55 (1963) . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Roma,* supra, 199 Conn. 117–18.

A subject of inquiry must serve "to explore more than general credibility" or it is collateral. *Dunbar* v. *Harris,* supra, 612 F.2d 693. "The question is whether the defendant's inability to examine the witness precludes [the] defendant from testing the truth of the witness' direct testimony . . . or whether the answers solicited might have established untruthfulness with respect to specific events of the crime charged." (Citations omitted.) Id.

After reviewing the record, we conclude that the defendant was not deprived of any sixth amendment right. Whether Cespedes had been involved in drug transactions other than the December 9 incident was a matter collateral to her testimony on direct examination. Whether she otherwise knew or had dealt with the informant also was collateral. These inquiries were directed at Cespedes' general credibility as a witness. They were not aimed at eliciting a specific bias, interest, or motive connected or relevant to the crime charged.[7]

Moreover, whatever the relevance of these matters to Cespedes' credibility as a witness, the issues of credi-

---

[7] In this regard, the defendant's reliance on *State* v. *Colton,* 227 Conn. 231, 630 A.2d 577 (1993), is misplaced. In that case, the defendant sought to introduce specific extrinsic evidence as an offer of proof contradicting a key witness' testimony on subject matter directly relevant and material to an issue in the case apart from its tendency to contradict the witness. Id., 247–48.

bility, motive, and bias were amply explored. The jury heard Cespedes' testimony of her plea bargain with the state and her desire to receive a more lenient sentence in return for her testimony in this case. Also, in the jury's presence, Cespedes recounted how she had lied to police officers and a probation officer in connection with the incident giving rise to this case. She conceded her drug addiction. Further, despite attempts to evade the issue through her fifth amendment privilege, Cespedes testified that she indeed had met with the informant prior to the December 9 incident. Thus, issues relating to Cespedes' general credibility were adequately explored.

We conclude that under the totality of the circumstances, the trial court did not abuse its discretion in refusing to strike Cespedes' direct testimony.

## II

The defendant next asserts that the trial court improperly excluded evidence of his honesty and reputation for honesty. The defendant testified in his own behalf. He then called Juan Mota as a witness. When the defendant questioned Mota as to the defendant's reputation for honesty, the state objected on the ground that such reputation was not in issue.[8] The trial court sustained the objection.

The defendant contends that a criminal defendant in this state is entitled to place his honesty and reputation for honesty in issue. He posits that he placed his honesty and reputation for honesty in issue by testifying in his own behalf. Therefore, he concludes, he had a right to offer evidence of his honesty and reputation for honesty. The defendant's claim and analysis is flawed.

---

[8] The defendant asked Mota: "Does Mr. Paredes among the people from San Luis and the Dominican Republic have a reputation for honesty or truthfulness?"

A criminal defendant may introduce "evidence of a trait of character as circumstantial evidence to prove that he acted in conformance with that trait and that it is unlikely he committed the crime charged . . . ." *State* v. *Martin,* 170 Conn. 161, 163, 365 A.2d 104 (1976). "Evidence of good character, to be relevant and therefore admissible on behalf of an accused, should be restricted to the trait of character involved in the issue and bear some pertinent analogy and reference to it." *State* v. *Campbell,* 93 Conn. 3, 10, 104 A. 653 (1918).

The defendant is precluded from introducing evidence of his honesty because honesty is not a character trait relevant to the crime of transporting narcotics with the intent to sell. Moreover, the defendant did not place his honesty or reputation for honesty in issue merely by taking the stand and testifying. "Normally the character of a defendant is placed in issue only when he calls a witness to testify for that purpose. . . ." (Citations omitted.) *State* v. *Nardini,* 187 Conn. 513, 528, 447 A.2d 396 (1982). A defendant may succeed in placing his good character in issue by testifying in his own behalf, but this requires (1) that the defendant's testimony had the specific purpose of placing his character in issue, and (2) that the character trait is relevant to the crime charged. See id. Here, the defendant contends that the mere fact that he testified placed his credibility in issue. Not only is this an insupportable argument,[9] but credibility is not a trait relevant to the crime charged. Therefore, the defendant's claim that this evidence was improperly excluded is without merit.

## III

The defendant's final claim is that the trial court improperly denied his motion for judgment of acquit-

[9] If we were to embrace the defendant's argument, every defendant could place honesty and reputation for honesty in issue simply by testifying.

tal. He contends that the state could not have proved that he aided Cespedes in a violation of § 21a-278 (b), pursuant to § 53a-8, because the state failed to establish that Cespedes committed that crime. The defendant posits that one cannot be an accessory to a crime for which there is no proven principal. Because the state failed to prove that Cespedes was a guilty principal in the crime charged, the defendant maintains that he cannot be convicted as her accessory. He asserts that the state failed to establish Cespedes' culpability because it did not prove one of the elements of the crime, that Cespedes was not drug-dependent within the meaning of § 21a-278 (b) at the time of the offense. We are unpersuaded.

The defendant has misconceived the nature of accessorial liability, and misconstrued the applicable statute. His argument assumes a distinction between the crime of transporting narcotics with the intent to sell and the crime of being an accessory to the same. Our law, however, is clear that "[t]here is no such crime as 'being an accessory'; the defendant was charged with [one] substantive offense . . . . The accessory statute merely provides alternate means by which a substantive crime may be committed. *State* v. *Baker,* 195 Conn. 598, 608, 489 A.2d 1041 (1985)." *State* v. *Harris,* 198 Conn. 158, 163, 502 A.2d 880 (1985).

Consequently, the defendant's culpability does not hinge on whether Cespedes or anyone else is proven liable as a principal in the crime charged. To be convicted of the substantive offense under the alternate means of accessorial liability, the defendant must have, "acting with the mental state required for commission of an offense . . . intentionally aids another person to engage in conduct which constitutes an offense . . . ." General Statutes § 53a-8. The statute contains no prerequisite that the state prove that a principal committed the crime. "This state . . . long ago

adopted the rule that there is no practical significance in being labeled an 'accessory' or a 'principal' for the purpose of determining criminal responsibility. See General Statutes (1875 Rev.) tit. XX, c. XIII, part X . . . *State* v. *Hamlin,* 47 Conn. 95, 118 (1879)." (Citation omitted.) *State* v. *Harris,* supra, 198 Conn. 164. "Those labels are hollow; the only predicate for charging [the defendant] with violating [the statute] is direct involvement in the crime."[10] Id., 165. In fact, pursuant to General Statutes § 53a-9,[11] it is not a defense to accessorial liability that the alleged principal in a crime has been acquitted. Thus, whether Cespedes could be found guilty of the crime charged has no bearing on whether the defendant is liable for the same substantive offense.

Even if this was not the case, the defendant wrongly contends that Cespedes could not be found guilty as a principal because the state failed to prove that she was not drug-dependent. Our Supreme Court has held that the absence of drug dependency is not an element of the offense set forth in § 21a-278 (b). *State* v. *Hart,* 221 Conn. 595, 608, 605 A.2d 1366 (1992). Rather, it is an exemption from liability under § 21a-269.[12] Id. To fall within the exemption and, consequently, to be sub-

---

[10] Clearly, proof of the commission of the crime is a condition precedent to conviction as an accessory. See generally *State* v. *Harris,* supra, 198 Conn. 163; *State* v. *Haddad,* 189 Conn. 383, 400, 456 A.2d 316 (1983).

[11] General Statutes § 53a-9 provides in pertinent part: "In any prosecution for an offense in which the criminal liability of the defendant is based upon the conduct of another person under section 53a-8 it shall not be a defense that . . . (2) such other person has not been prosecuted for or convicted of any offense based upon the conduct in question, or has been acquitted thereof, or has legal immunity from prosecution therefor . . . ."

[12] General Statutes § 21a-269 provides: "In any complaint, information or indictment, and in any action or proceeding brought for the enforcement of any provision of this part, it shall not be necessary to negative any exception, excuse, proviso or exemption contained in said section, and the burden of proof of any such exception, excuse, proviso or exemption shall be upon the defendant."

ject to a lesser penalty under § 21a-277 (a),[13] a defendant must prove by a preponderance of the evidence that he or she is drug-dependent. Id., 610–11.[14]

The trial court properly denied the defendant's motion for judgment of acquittal because the state presented sufficient evidence to establish the defendant's guilt. Our courts utilize a two part analysis when reviewing a challenge to the sufficiency of evidence. *State* v. *Henning*, 220 Conn. 417, 420, 599 A.2d 1065 (1991). "We first review the evidence in the light most favorable to sustaining the guilty verdict." Id. "We then determine whether, upon the facts thus established and the inferences reasonably drawn therefrom, whether any rational trier of fact could have concluded that the cumulative effect of the evidence established the defendant's guilt beyond a reasonable doubt." Id. In the review process, the probative force of the evidence is not diminished if it consists, in whole or in part, of evidence that is circumstantial rather than direct. Id., 420–21. Findings of fact that are consistent with guilt are afforded great deference unless they are improbable and unconvincing. *State* v. *Osman*, 218 Conn. 432, 437, 589 A.2d 1227 (1991).

Here, the defendant was charged with intentionally aiding the transportation of narcotics with intent to sell. The jury reasonably could have found that the yellow

---

[13] General Statutes § 21a-277 (a) provides in pertinent part: "Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person . . . a narcotic substance, except as authorized in this chapter, for a first offense, shall be imprisoned not more than fifteen years and may be fined not more than fifty thousand dollars or be both fined and imprisoned . . . ."

[14] More important, however, the relevant inquiry is whether the defendant, as opposed to Cespedes, was not drug-dependent at the time of the offense. It is the defendant who is charged with violating § 21a-278 (b). As such, he must qualify for the exemption in order to be subject to a lesser penalty. In that he testified on direct examination that he is not drug-dependent, the defendant does not qualify for the exemption.

bag transported in the defendant's truck contained cocaine, a narcotic substance. The defendant transported the yellow bag from New York to the site of the drug deal and, upon arrival, retrieved the bag and handed it to Cespedes, the alleged seller.

Finally, the state needed to establish intent. Because the defendant was charged with accessorial liability, the requisite intent is twofold: that the defendant intended to aid the principal, and that in so aiding he intended to commit the offense with which he is charged. *State* v. *Boykin,* 27 Conn. App. 558, 567–68, 609 A.2d 242, cert. denied, 223 Conn. 905, 610 A.2d 179 (1992). "The state of mind of one accused of a crime is often the most significant and, at the same time, the most elusive element of the crime charged. . . . Because it is practically impossible to know what someone is thinking or intending at any given moment, absent an outright declaration of intent, a person's state of mind is usually proved by circumstantial evidence . . . and is, except in rare cases, a question of fact. . . . Intention is a mental process which, of necessity, must be proven either by the statements or the actions of the person whose conduct is being examined. . . . Where there is sufficient evidence to support a reasonable inference that the defendant intended to commit the crime charged, whether such an inference should be drawn is properly a question for the jury to decide. . . . *State* v. *Williams,* 202 Conn. 349, 356–57, 521 A.2d 150 (1987)." (Citations omitted; internal quotation marks omitted.) Id., 568.

On the basis of our review of all the evidence presented at trial, we cannot conclude, as a matter of law, that the jury could not have found as it did. There was sufficient evidence for the jury reasonably to have found that the defendant intended to aid Cespedes, and intended to transport the cocaine for the purpose of sale. There was evidence that the defendant not only knew of the contents of the yellow bag, but actually

procured the cocaine. Further, evidence was presented indicating that the defendant knew that the cocaine was to be sold to Benny and Brian. We conclude, therefore, that the evidence was sufficient for the jury to have found, beyond a reasonable doubt, that the defendant was guilty of aiding a violation of General Statutes § 21a-278 (b). The trial court's denial of the defendant's motion for judgment of acquittal was proper.

The judgment is affirmed.

In this opinion the other judges concurred.