STATE OF CONNECTICUT *v.* ALKEITH GAYLE
(AC 20881)

Lavery, C. J., and Schaller and Flynn, Js.

Argued March 20—officially released July 31, 2001

*James B. Streeto*, deputy assistant public defender, for the appellant (defendant).

*Timothy J. Sugrue*, senior assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *John M. Waddock*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

LAVERY, C. J. The defendant, Alkeith Gayle, appeals from the judgment of conviction, rendered after a jury trial, of carrying a pistol without a permit in violation of General Statutes § 29-35 (a), conspiracy to sell narcotics in violation of General Statutes §§ 21a-277 (a) and 53a-48, sale of narcotics in violation of General Statutes § 21a-277 (a), attempt to commit robbery in the first degree in violation of General Statutes §§ 53a-49 and 53a-134 (a) (2), and felony murder in violation of General Statutes § 53a-54c.[1] The trial court sentenced him to a total effective term of sixty-five years imprisonment. The defendant claims on appeal that (1) the evidence was insufficient to support his conviction for sale of narcotics, (2) the court improperly instructed

---

[1] The defendant was acquitted on an additional count charging him with murder in violation of General Statutes § 53a-54a.

the jury on the elements of felony murder, (3) the court improperly instructed the jury on the concepts of reasonable doubt and presumption of innocence, and (4) the evidence was insufficient to support his conviction for felony murder.[2] We agree with the defendant's first claim and reverse the court's judgment with respect to his conviction for sale of narcotics, but affirm the court's judgment as to the conviction of the remaining charges.

The jury reasonably could have found the following facts. In the early morning hours of May 16, 1996, the defendant and his friend, Jason Jeter, were present in a park near the corner of Chapel and Day streets in New Haven. The defendant and Jeter planned to rob passersby, as they apparently had on previous occasions.[3] The defendant was armed with a .38 caliber snub-nosed revolver. The two met with an acquaintance, Robert Pinkston, and the three then sat down on benches near the edge of the park.

Shortly thereafter, the victim, Thomas Harris, approached the park near to where the defendant, Jeter and Pinkston were sitting. The defendant and Jeter walked toward Harris while Pinkston remained seated. Harris asked the defendant and Jeter whether they were "working," i.e., selling drugs, to which the two replied in the affirmative. Jeter asked Harris, "How many?" and Harris replied, "Four." Jeter reached into the defendant's jacket pocket and removed four individually wrapped pieces of a substance subsequently alleged by the state to be crack cocaine. Harris paid the defendant $40 for the drugs.

---

[2] The defendant also argued that the court improperly granted the state's motion in limine, barring him from questioning police officers about statements that he had made to them prior to his arrest. The defendant withdrew that issue in his reply brief.

[3] Jeter testified that when he and the defendant spent time together, they would "[s]ell drugs, steal cars [and] rob people."

Jeter turned to head back toward Pinkston, and the defendant told Harris to "run it," meaning that Harris was to return the alleged crack cocaine and to surrender his other valuables to the defendant. Harris replied, "I don't have time for this," and started to leave. A brief scuffle ensued between Harris and the defendant. Harris broke free and began to walk quickly away. Jeter had stopped to watch this encounter. The defendant took a revolver from his pocket and aimed it at Harris. The defendant looked over at Jeter, who told the defendant to shoot Harris. The defendant fired one shot, which struck Harris in the back of the head. Harris fell to the ground, bleeding profusely. Jeter and the defendant fled the park, running past Harris. Pinkston fled on his bicycle in a different direction.

Jeter and the defendant ran to a nearby group of apartment houses on Day Street, one of which was the defendant's residence. The defendant went to the back steps of the apartment, and Jeter, after some time,[4] returned to the park and retrieved the four pieces of alleged crack cocaine, some of which were in the victim's hand, the rest on the sidewalk nearby. Jeter returned to the apartment houses and met the defendant, who by then had entered his residence on the second floor. The defendant gave Jeter money in exchange for the alleged crack cocaine.

Jeter remained at the defendant's residence until later in the evening. When Jeter left the defendant's apartment, Harris still lay on the ground in the park where he had fallen. Sometime thereafter, a neighborhood resident summoned police and medical personnel. The victim had lost a large amount of blood and died of his gunshot wound en route to the hospital. The defendant

---

[4] In response to the state's question as to whether Jeter waited for "[a] short period of time," Jeter replied that it "[c]ould have been. It seemed kind of lengthy."

later was arrested and was convicted after a jury trial as previously outlined. Additional facts will be set forth as we consider each of the issues he raises on appeal.

## I

The defendant first claims that the state's evidence at trial was insufficient to support his conviction for sale of narcotics.[5] Specifically, he argues that the state failed to prove that the substance the defendant sold to Harris was in fact crack cocaine, a narcotic substance. We agree with the defendant.

The defendant did not testify at trial. The only evidence submitted that pertained to the drug transaction between the victim, Jeter and the defendant was Jeter's testimony recounting the event. Because Jeter had returned to the murder scene to retrieve the crack cocaine, it no longer was on Harris' person when police and medical personnel arrived at the scene. Additionally, the defendant was not in possession of the crack cocaine at the time of his arrest. As such, no substance was available for analysis and introduction into evidence at trial.

"We first articulate the standard of review applicable to the defendant's claim. 'In reviewing a sufficiency [of the evidence] claim, we apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence

---

[5] General Statutes § 21a-277 (a) provides in relevant part: "Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any controlled substance which is a hallucinogenic substance other than marijuana, or a narcotic substance, except as authorized in this chapter . . . shall be imprisoned . . . and may be fined . . . or be both fined and imprisoned . . . ."

established guilt beyond a reasonable doubt.' . . . *State* v. *Murray*, 254 Conn. 472, 478–79, 757 A.2d 578 (2000)." *State* v. *Green*, 62 Conn. App. 217, 225, 774 A.2d 157, cert. granted on other grounds, 256 Conn. 927, 928, 776 A.2d 1147, 1148 (2001).

To prove sale of a narcotic substance, "[t]he state [must] prove . . . [beyond a reasonable doubt] that the defendant knowingly sold the substance to another person and that the substance sold was a narcotic." *State* v. *Mahon*, 53 Conn. App. 231, 236, 729 A.2d 242 (1999). "Proof of the exact nature of the substances upon which the prosecution is grounded, of course, is necessary, and the nature of the examinations essential for such proof with a high degree of scientific exactitude mandates the opinion of one competent to conduct such examinations." *State* v. *Clemons*, 168 Conn. 395, 402, 363 A.2d 33, cert. denied, 423 U.S. 855, 96 S. Ct. 104, 46 L. Ed. 2d 80 (1975).

In the present case, the only evidence admitted to prove that the defendant had sold a narcotic substance was Jeter's testimony recounting the incident. Jeter, fourteen years old at the time, was not shown to have any particular expertise in identifying crack cocaine by visual inspection, if such an identification is even possible. Neither the defendant nor Pinkston testified as to the transaction. No sample of the alleged narcotic substance ever was retrieved from the victim, the defendant or Jeter. Consequently, nothing was available for field testing or laboratory analysis. There was no testimony concerning the use of the alleged narcotic and its subsequent effect on the user.

"A jury may not engage in speculation and conjecture to reach a factual result . . . and any inferences that are drawn must be rational and arise out of the evidence that has been presented. . . . Although proof beyond a reasonable doubt does not require proof beyond a

possible doubt . . . it does require that the proof be such as to preclude every reasonable hypothesis except that which it tends to support, and that it be consistent with the defendant's guilt and inconsistent with any other rational conclusion. . . . Further, this obligation of proof beyond a reasonable doubt extends to every essential element of the crime charged." (Citations omitted.) *State* v. *Mierez*, 24 Conn. App. 543, 552, 590 A.2d 469, cert. denied, 219 Conn. 910, 911, 593 A.2d 136 (1991).

Absent resort to speculation and conjecture, the jury in this case could not reasonably have inferred that the defendant sold a narcotic substance to the victim because there was no evidence to support a finding that the substance transferred was in fact crack cocaine. Given the lack of evidence as to the character of the substance, there is no way that the jury could have concluded beyond a reasonable doubt that the defendant was guilty of sale of a narcotic substance. We reverse the judgment as to the defendant's conviction of sale of a narcotic substance in violation of § 21a-277 (a) and vacate the portion of his sentence associated therewith.

## II

The defendant next claims that the court improperly instructed the jury on the elements of felony murder, thereby broadening the range of behavior contemplated by the felony murder statute.[6] Specifically, the defen-

---

[6] General Statutes § 53a-54c provides in relevant part: "A person is guilty of murder when, acting either alone or with one or more persons, he *commits or attempts to commit robbery*, burglary, kidnapping, sexual assault in the first degree, aggravated sexual assault in the first degree, sexual assault in the third degree, sexual assault in the third degree with a firearm, escape in the first degree, or escape in the second degree and, *in the course of and in furtherance of such crime* or of flight therefrom, he, or another participant, if any, causes the death of a person other than one of the participants . . . ." (Emphasis added.)

dant argues that the charge as given did not sufficiently convey the connection between the attempted robbery and Harris' death necessary for the jury to convict him of felony murder. We disagree.

The court instructed the jury on the elements of felony murder as follows: "A person is guilty of murder when, acting either alone or with one or more persons, he attempts to commit robbery and, in the course of and in furtherance of such crime, he, or another participant, causes the death of a person other than one of the participants. That's felony murder.

"Okay. There [are] three elements here. First, the accused either alone or acting with another committed an attempted robbery.

"Second, the death of Mr. Harris was caused by the accused or another participant, and the person whose death was caused was not a participant in the attempted robbery.

"Third, the accused or another participant caused the death of Mr. Harris in the course of and in furtherance of the attempted robbery.

* * *

"The third element of felony murder is that the death was caused in the course of and in furtherance of the attempted robbery. This means that during the commission of the attempted robbery and in the course of carrying out its objective, the death was caused *or the chain of events such as the shooting resulting in the death was set in motion.*

"In furtherance of an attempted robbery means the killing must be causally related to the attempted robbery. It must be done to somehow further the purpose of the attempted robbery. If one commits the attempted robbery, [and] *the natural and probable consequences*

*of which involve the consequences of taking a life,* that person is responsible for a homicide committed while acting in pursuance of the attempted robbery if he caused the death during the attempted robbery.

"In other words, in the course of the attempted robbery means during any part of the defendant's participation in the attempted robbery. Thus, the shooting causing death must have occurred somewhere within the time span of the occurrence of the facts which constituted the attempted robbery.

\* \* \*

"To summarize, you must find that the state has proven beyond a reasonable doubt that, one, the accused either alone or with another participant committed an attempted robbery.

"Two, Mr. Harris' death was caused by the accused or another participant in the attempted robbery and that Mr. Harris was not a participant in the attempted robbery.

"And, three, that his death was caused in the course of and in furtherance of the attempted robbery." (Emphasis added.)

The defendant did not request a different charge on the elements of felony murder nor did he take exception to the charge as given. He therefore requests review pursuant to *State* v. *Golding,* 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[7] Because the trial transcript con-

---

[7] Pursuant to *Golding,* "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Emphasis in original.) *State* v. *Golding,* supra, 213 Conn. 239–40.

tains the court's entire charge to the jury, the record is adequate. Further, " '[i]t is . . . constitutionally axiomatic that the jury be instructed on the essential elements of a crime charged.' . . . *State* v. *Denby*, 235 Conn. 477, 483, 668 A.2d 682 (1995). A claim that the trial court failed to instruct the jury adequately on an essential element of the crime charged necessarily involves the defendant's due process rights and implicates the fairness of his trial. *State* v. *Anderson*, 212 Conn. 31, 36, 561 A.2d 897 (1989)." *State* v. *Mahon*, supra, 53 Conn. App. 234. We therefore will review the defendant's claim because the first two elements of *Golding* are satisfied.

"The standard of review for an improper instruction on an element of an offense is whether it is reasonably possible that the jury was misled. *State* v. *Prioleau*, 235 Conn. 274, 284, 664 A.2d 743 (1995); *State* v. *Ash*, 231 Conn. 484, 493, 651 A.2d 247 (1994). In determining whether it was indeed reasonably possible that the jury was misled by the trial court's instructions, the charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect upon the jury in guiding them to a correct verdict in the case. *State* v. *Estep*, 186 Conn. 648, 651–52, 443 A.2d 483 (1982). . . . The charge is to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge. *State* v. *Reed*, 174 Conn. 287, 305, 386 A.2d 243 (1978) . . . . The test to be applied to any part of a charge is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result. *State* v. *Roy*, 173 Conn. 35, 40, 376 A.2d 391 (1977) . . . . The charge must be considered from the standpoint of its effect on the jury in guiding them to a proper verdict." (Citations omitted; internal quotation marks omitted.) *State* v. *Ortiz*, 47

Conn. App. 333, 344–45, 705 A.2d 554 (1997), cert. denied, 244 Conn. 902, 710 A.2d 175 (1998).

The defendant takes issue with the court's instruction as to the third element of felony murder, particularly the previously stated portion that is italicized. According to the defendant, the court failed to convey that "a distinct, logical nexus between the homicide and the underlying felony must be present." He claims that the instruction as given allowed the jury to find him guilty of felony murder for a killing that was insufficiently connected to the underlying felony of attempt to commit robbery. We disagree.

The defendant in making his claim asks us to focus on isolated portions of the instruction to find it deficient overall, a mode of analysis prohibited by our standard of review. Even if the portions of the instructions complained of could be read to convey to the jury that a more attenuated relationship between the attempted robbery and Harris' death would satisfy the third element of the felony murder statute, the instruction as a whole sufficiently conveyed the proper standard.

The court instructed the jury three times that Harris' death must have occurred "in the course of and in furtherance of the attempted robbery," and, additionally, that "the killing must be causally related to the attempted robbery" and that the killing "must . . . somehow further the purpose of the attempted robbery." The court also charged that the defendant should be held responsible under the felony murder statute for Harris' death if the defendant "caused the death during the attempted robbery," or, "[i]n other words . . . during any part of the defendant's participation in the attempted robbery . . . [i.e.,] somewhere within the time span of the occurrence of the facts which constituted the attempted robbery." We conclude that these parts of the jury instruction clearly and sufficiently con-

veyed the requisite connection between the attempted robbery and Harris' death.

Because it is not reasonably possible that the jury was misled by the court's charge on the third element of felony murder, the defendant has not shown that a constitutional violation clearly exists and that it clearly deprived him of a fair trial. Consequently, he has not satisfied the third prong of *Golding*, and his claim must fail.

III

The defendant also claims that the court improperly instructed the jury on the concepts of reasonable doubt and the presumption of innocence. We disagree.

Again, the defendant failed to preserve properly his claim of instructional error and requests review pursuant to *State* v. *Golding*, supra, 213 Conn. 239–40. Because the record is adequate and because a claim of error regarding instruction on the burden of proof is of constitutional magnitude; *State* v. *Morant*, 242 Conn. 666, 687, 701 A.2d 1 (1997); *State* v. *Green*, supra, 62 Conn. App. 242; we will review the claim.

The court's instructions to the jury as to the presumption of innocence and reasonable doubt in relevant part were as follows: "[E]very person charged with the commission of a crime is presumed to be innocent until proven guilty. This means that when the accused appeared for trial, he came free from any bias, prejudice or burden arising from his position as the accused. As far as you are concerned, he then was innocent and he continues to be innocent unless the evidence produced in the case satisfies you beyond a reasonable doubt that he is guilty of one or more of the charges.

*"This means that if all the evidence offered is capable of two reasonable constructions, one of which is consistent with innocence, it is to be given that construc-*

*tion.* The accused does not have to prove that he did not commit the offenses charged, the state must prove that he did. And that burden of proof remains at all times the obligation of the state.

"The presumption of innocence applies to all the elements necessary to constitute the offenses charged, and there is more than one element in each of these charges. This presumption of innocence, however, does not have the effect of evidence itself. Its only effect is to place on the state the burden of establishing the elements necessary to prove guilt beyond a reasonable doubt.

"A reasonable doubt is not a doubt raised by one questioning simply for the sake of a doubt, nor is it a surmise, a guess, speculation, conjecture or a doubt not founded upon the evidence. It's not hesitation arising from feelings of sympathy or pity for the accused or his family members, it's not a frivolous doubt or a doubt without support from the evidence.

"*A reasonable doubt is one based upon reason which grows out of the evidence or lack of evidence in the case.* A reasonable doubt is one that is reasonable in the light of all the evidence, one honestly entertained after thorough evaluation and careful examination of all the evidence, testimony of witnesses on direct and cross-examination, any stipulations, all the exhibits and any reasonable inferences you draw therefrom.

"In summary . . . [a] reasonable doubt is one that a reasonable person can reasonably entertain after a fair evaluation of all the evidence. In effect, the state need not eliminate every possible doubt from your mind, only a reasonable doubt.

"If the proven facts are reasonably consistent with innocence, you cannot find the defendant guilty; but if those facts do not lead to any theory reasonably

consistent with innocence, but only with guilt, you should find the defendant guilty." (Emphasis added.)

Again, we must review the court's instruction as a whole, eschewing critical dissection, to determine whether it had the desired effect of guiding the jury to a proper verdict. *State* v. *Ortiz*, supra, 47 Conn. App. 344–45. We may reverse the judgment of the trial court on the basis of this claim only if it is reasonably possible that the jury was misled such that a constitutional violation clearly exists and clearly deprived the defendant of a fair trial. Id.; *State* v. *Golding*, supra, 213 Conn. 240.

The defendant claims that the court improperly instructed the jury when it recited the italicized portions of the charge. He argues that the court improperly instructed the jury by conveying that a reasonable doubt is a doubt that "has a foundation in the evidence or lack of evidence presented in the case," rather than that such doubt need only be "consistent with the evidence." We disagree.

We are unpersuaded by the defendant's attempts to explain the vital difference between the phrases "grows out of the evidence or lack of evidence" and "is consistent with the evidence," and why it is reasonably possible that the jury was misled by the court's use of the former phrase rather than the latter in explaining the concept of reasonable doubt, thereby calling into question the very fairness of the trial. Our Supreme Court recently rejected a constitutional challenge to similar language[8] in a jury instruction, holding that, in the context of the overall charge, it "did not dilute the state's burden of proof." *State* v. *Montgomery*, 254 Conn. 694, 730, 759 A.2d 995 (2000); see also *State* v. *Griffin*, 253

[8] The challenged portion of the court's instruction was that "[a] reasonable doubt . . . is a real doubt, an honest doubt, a doubt which has its foundation in the evidence or the lack of evidence." (Internal quotation marks omitted.) *State* v. *Montgomery*, 254 Conn. 694, 729, 759 A.2d 995 (2000).

Conn. 195, 207, 749 A.2d 1192 (2000) (noting that language repeatedly has been upheld). Because the court's charge on reasonable doubt as a whole in this case was proper, the defendant's claim must fail.

The defendant also argues that the court improperly conveyed that the jury should apply a lesser standard to the state's burden of proof by instructing the jury that, if it found the evidence capable of two reasonable constructions, it should choose the construction consistent with innocence. Specifically, he claims that this instruction, which is known as a "two-inference" instruction; id., 208; had the effect of directing the jury to apply the preponderance of the evidence standard rather than the beyond a reasonable doubt standard. We disagree.

Our Supreme Court in *Griffin*, a decision released subsequent to the defendant's trial, expressed disfavor with the so called "two-inference instruction" and invoked its supervisory powers to direct trial courts to refrain from using the language in future jury charges. Id., 209–10. The court, nonetheless, noted its prior approval of the charge and frequent rejections of challenges thereto, and refused to find error in the case before it because "the two-inference charge, when viewed in the context of an otherwise proper instruction on reasonable doubt, does not impermissibly dilute the state's burden of proof." Id., 209. The situation in this case is similar. The court's instruction, overall, clearly conveyed to the jury that the state was responsible for proving the defendant's guilt beyond a reasonable doubt and that the defendant was not required to prove his innocence.[9]

---

[9] We note that the court, prior to the start of trial, also instructed each venire panel as to the burden of proof in a criminal trial, specifically conveying that the state must prove each element of the charged offenses "beyond a reasonable doubt," that the defendant did not need to prove his innocence and that a "preponderance of the evidence" standard was *not* to be employed.

Because it is not reasonably possible that the jury was misled by the court's charge on the presumption of innocence and reasonable doubt, the defendant has not shown that a constitutional violation clearly exists and that it clearly deprived him of a fair trial. As a result, he has not satisfied the third prong of *Golding*, and his claims must fail.

IV

The defendant's last claim is that the evidence adduced at trial was insufficient to support his conviction of felony murder. Specifically, he claims that Harris' death bore an insufficient relationship to the underlying attempted robbery to satisfy the requirements of the felony murder statute. We disagree.

Our standard of review is the same as that articulated in part I. We must construe the evidence in the light most favorable to sustaining the defendant's conviction, then ask whether, given the facts so construed and the associated inferences, the jury reasonably could have concluded that the defendant was guilty beyond a reasonable doubt. *State* v. *Green*, supra, 62 Conn. App. 225.

The defendant claims that Harris was shot not in the course of and furtherance of the attempted robbery, but after the attempted robbery was complete and for a reason wholly unrelated to that attempted robbery. He argues that Harris died because, in failing to comply with the defendant's demand to relinquish his valuables, Harris offended and angered the defendant, prompting the shooting. In other words, "[t]he victim was shot because he disrespected the defendant, not as part of the robbery." We emphatically reject this claim.

"In order to obtain a conviction for felony murder the state must prove, beyond a reasonable doubt, all the elements of the statutorily designated underlying felony, [here, attempted robbery] and in addition, that

a death was caused in the course of and in furtherance of that felony. *State* v. *Castro*, 196 Conn. 421, 428–29, 493 A.2d 223 (1985)." (Internal quotation marks omitted.) *State* v. *Burke*, 51 Conn. App. 798, 807, 725 A.2d 370 (1999), aff'd, 254 Conn. 202, 757 A.2d 524 (2000); General Statutes § 53a-54c.

"Felony murder occurs when, in the course of and in furtherance of another crime, one of the participants in that crime causes the death of a person who is not a participant in the crime. . . . The two phrases, 'in the course of' and 'in furtherance of,' limit the applicability of the statute with respect to time and causation. . . .

"The phrase 'in the course of' focuses on the temporal relationship between the murder and the underlying felony. . . . We previously have defined the phrase 'in the course of' for purposes of § 53a-54c to include 'the period immediately before or after the actual commission of the crime . . . .'

"[T]he phrase 'in furtherance of' was intended to impose the requirement of a relationship between the underlying felony and the homicide beyond that of mere causation in fact, similar to the concept of proximate cause in the law of torts. Primarily its purpose was to limit the liability of a person whose accomplice in one of the specified felonies has performed the homicidal act to those circumstances which were within the contemplation of the confederates to the undertaking . . . . " (Internal quotation marks omitted.) *State* v. *Montgomery*, supra, 254 Conn. 734.

The defendant, in making his claim, ignores common sense and attempts to slice finely the series of events that transpired in the park, characterizing them as distinct and wholly unrelated incidents. He buttresses his argument by citing selective testimony, which is taken

out of context.[10] The attempted robbery and the shooting of the escaping victim, however, are not completely independent acts. In *Montgomery*, our Supreme Court rejected a claim that a defendant's killing of a resisting attempted kidnapping victim was not "in the course of and in furtherance of" the attempted kidnapping because the killing necessarily implied that the attempt to kidnap had ceased. Id., 731–34. Similarly, we reject the argument that the killing of this victim, who resisted an attempted robbery, was not committed "in the course of and in furtherance of" the attempted robbery because the attempted robbery had ceased.

Viewing the evidence in the light most favorable to sustaining the defendant's conviction, we hold that the jury reasonably could have concluded that Harris' death occurred in the course of and in furtherance of the defendant's commission of an attempt to commit robbery and, therefore, that the defendant was guilty of felony murder.

The judgment is reversed only as to the conviction of the crime of sale of narcotics and the case is

---

[10] Further, the defendant focuses on Jeter's testimony that, when Jeter told the defendant to shoot Harris, "It wasn't really over the money. . . . When you're robbing somebody, it's like respect of authority; you got the gun. For them to run on you is in the sense of disrespect; you think I won't shoot you, so shoot him." Jeter, however, also testified that, as Harris began to walk away, "[the defendant] look at me like, he looked at me as in what do I do now, he's running, and I said shoot him, as in hit him in his legs, back, stop him, to get the things back."

Even if we were to accept the defendant's contention, which we do not, that a killing based on anger that an attempted robbery is not proceeding as planned is not really committed "in furtherance of" that attempted robbery, the evidence still was sufficient for the jury to find that the defendant killed Harris not out of anger, but to stop him from leaving with the alleged crack cocaine and his other valuables. Although Jeter's testimony in this respect is inconsistent, "[i]t is without question that the jury is the ultimate arbiter of fact and credibility. . . . As such, it may believe or disbelieve all or any portion of the testimony offered. . . . It is also the absolute right and responsibility of the jury to weigh conflicting evidence . . . ." (Citation omitted; internal quotation marks omitted.) *Stuart* v. *Stuttig*, 63 Conn. App. 222, 226, 772 A.2d 778 (2001).

remanded with direction to render judgment of not guilty of that crime and to vacate the portion of the defendant's sentence associated therewith. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.