STATE OF CONNECTICUT *v.* ROBERT EDWARD
MISH, SR.
(AC 27284)

Bishop, Beach and Foti, Js.

246

Argued May 28—officially released September 16, 2008

*Carlos E. Candal,* special public defender, for the appellant (defendant).

*Lisa A. Riggione,* senior assistant state's attorney, with whom, on the brief, were *David Shepack,* state's attorney, and *Devin T. Stilson,* senior assistant state's attorney, for the appellee (state).

*Opinion*

FOTI, J. The defendant, Robert Edward Mish, Sr., appeals from the judgment of conviction, rendered after a jury trial, of two counts of possession of narcotics in violation of General Statutes § 21a-279 (a), two counts of sale of narcotics by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b)[1] and two counts of conspiracy to sell cocaine in violation of General Statutes §§ 53a-48 and 21a-278 (b). On appeal, the defendant claims that (1) the court improperly denied his motion to dismiss for failure to grant him a speedy trial, (2) the court improperly limited his cross-examination of a state's witness and (3) the court incorrectly denied his motion for a judgment of acquittal because the evidence adduced at trial was insufficient as a matter of law to support his conviction of two counts of sale of narcotics by a person who is not drug-dependent. We affirm the judgment of the trial court.

---

[1] General Statutes § 21a-278 (b) provides in relevant part: "Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any narcotic substance . . . and who is not at the time of such action a drug-dependent person, for a first offense shall be imprisoned not less than five years nor more than twenty years; and for each subsequent offense shall be imprisoned not less than ten years nor more than twenty-five years. The execution of the mandatory minimum sentence imposed by the provisions of this subsection shall not be suspended . . . ."

The jury reasonably could have found the following facts. In 2003, acting on the concerns of the New Milford police department, the statewide narcotics task force (task force) initiated an investigation into the possible trafficking of cocaine out of the Eagles Cafe in New Milford. Information provided by the New Milford police department, as well as other sources, indicated that the defendant supplied the cocaine to the individuals selling narcotics out of the cafe. Officer David Eldridge, assigned to the task force and acting undercover, made several narcotics purchases in the cafe in the subsequent weeks.

On January 22, 2004, at 8:15 p.m., Eldridge returned to the Eagles Cafe. Forty-five minutes later, he left after purchasing one gram of cocaine from James Taylor, a low-level drug dealer working for the defendant. The defendant was present at this transaction and actually took the money from Eldridge and put it in his pocket. On February 4, 2004, Eldridge made another purchase of cocaine from Taylor and the defendant in the cafe. Again, Taylor handed Eldridge the drugs, and the defendant took the money from Eldridge.

The jury could have also found that these two purchases were but a small part of an illegal drug conspiracy that specialized in trafficking cocaine, organized and controlled by the defendant, which operated in the New Milford area. This operation involved the "bagging up," selling and distributing for sale of two to three ounces of cocaine per week. Several people were involved in this operation, including Taylor, Robert Kelly and Robert Edward Mish, Jr., the defendant's son. The defendant estimated to various individuals that this operation netted him $3000 a week.

On March 10, 2004, the defendant was arrested. At the time, he was serving a thirteen and one-half year sentence on an unrelated conviction for violation of

probation. On February 2, 2005, he filed a speedy trial motion. On February 8, 2005, the court granted this motion. The defendant was subsequently found guilty by the jury of the subject charges. On December 2, 2005, the court sentenced the defendant to a total effective term of fifteen years incarceration of which five cannot be suspended. This appeal followed. Additional facts will be set forth where necessary.

I

First, the defendant claims that the court improperly denied his motion to dismiss for failure to grant him a speedy trial.[2] Specifically, the defendant challenges the court's factual findings with respect to excludable time from speedy trial calculations. We disagree.

The following facts are necessary for our resolution of the defendant's claim. The defendant, while incarcerated for a previous conviction, was arrested on March 10, 2004, on the subject charges. On February 2, 2005, the defendant filed a motion for a speedy trial pursuant to General Statutes § 54-82c. On February 8, 2005, the court, *Brunetti, J.*, granted the motion for a speedy trial and set a trial date for May 26, 2005.

On May 18, 2005, defense counsel filed with the court, pursuant to General Statutes § 54-56d, a motion requesting an evaluation of the defendant to determine

---

[2] The defendant has not clearly set forth what claims he is asserting with respect to this issue. He appears to argue that the denial of his motion to dismiss for failure to grant him a speedy trial violated the federal and state constitutions. We conclude that to the extent that constitutional claims have been raised, they have been abandoned as a result of an inadequate brief. See *State* v. *Blango*, 103 Conn. App. 100, 116 n.11, 927 A.2d 964 ("[W]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failing to brief the issue properly." [Internal quotation marks omitted.]), cert. denied, 284 Conn. 919, 933 A.2d 721 (2007).

his competency to stand trial.[3] On May 25, 2005, the court, *Brunetti, J.*, ordered that an examination be done within fifteen days and continued the case until June 9, 2005, expressly tolling the time for the defendant's speedy trial.[4] At the hearing, defense counsel reported observing, on several occasions during extended meetings with the defendant, paranoid behavior to the extent that the defendant was unable to assist in his defense. This behavior was a marked deviation from the defendant's past behavior. Moreover, the defendant was offering no relevant information in preparation of his defense. The defendant also addressed the court. He opposed the motion and asked how he could stop the court from granting it. The court granted the motion.

On June 9, 2005, the court, *Gill, J.*, in light of the fact that the requested examination had yet to occur, continued the case until July 1, 2005. In reference to this additional continuation, counsel for the defendant expressed a "need to reschedule [the examination]" and did not raise any objection. A report determining that the defendant was competent was filed with the court on June 29, 2005.[5] At a July 7, 2005 hearing, the report was admitted into evidence, and the court, *Gill,*

---

[3] General Statutes § 54-56d mandates a competency examination when defense counsel or the court requests such an inquiry. *State* v. *Mitchell*, 54 Conn. App. 361, 367, 738 A.2d 188, cert. denied, 251 Conn. 910, 739 A.2d 1250 (1999), cert. denied, 528 U.S. 1171, 120 S. Ct. 1197, 145 L. Ed. 2d 1101 (2000). Moreover, "the time consumed in the proceedings relating to the defendant's competence . . . cannot be charged against the state for speedy trial purposes." Id., 366; see Practice Book § 43-40.

[4] During the hearing on the motion for a competency examination, the court spoke directly to the defendant on the matter of his speedy trial motion:

"The Court: Okay. Well, you understand if I grant this motion to hear his request, it takes thirty days to get this done. That would mean the 120 days has run; however, that will not run. . . . [T]he time period is tolled or stopped while you're being examined. Do you understand that?

"[The Defendant]: Well, yeah."

[5] Though a hearing was scheduled for July 1, 2005, the state, in oral argument, stipulated that there is no record of any court proceedings involving this case on that date.

*J.*, found the defendant competent to stand trial. The defendant's attorney indicated that he was prepared to stipulate to the court that the defendant was competent to stand trial, as well. The court also specified that it was ready to start jury selection the following day. The defendant's counsel, however, requested that jury selection not begin until July 12, 2005. After an off the record discussion with the defendant, the defendant's counsel stated to the court that the defendant agreed to delay jury selection until July 12, 2005. The court granted the continuance and ordered jury selection to begin on July 12, 2005.

On July 12, 2005, the defendant filed a pro se, hand-written motion to dismiss[6] for violation of his right to a speedy trial. The court, *Gill, J.*, denied this motion, finding that there was no violation of § 54-82c and that "all the delays [were] attributable to initiatives of the defense . . . ."

At the outset, we identify the applicable standard of review. "The determination of whether a defendant has been denied his right to a speedy trial is a finding of fact, which will be reversed on appeal only if it is clearly erroneous. . . . The trial court's conclusions must stand unless they are legally and logically inconsistent with the facts. . . . Although the right to a speedy trial is fundamental, it is necessarily relative, since a requirement of unreasonable speed would have an adverse impact both on the accused and on society." (Citation omitted; internal quotation marks omitted.) *State* v. *Lacks*, 58 Conn. App. 412, 417, 755 A.2d 254, cert. denied, 254 Conn. 919, 759 A.2d 1026 (2000).

---

[6] It is worthy of note that the defendant preserved his claim for appellate review merely by his motion for a speedy trial. Therefore, it is not significant that he filed a subsequent pro se motion to dismiss while represented by counsel because his motion for a speedy trial was filed appropriately. See *State* v. *Cote*, 101 Conn. App. 527, 532 n.6, 922 A.2d 322, cert. denied, 284 Conn. 901, 931 A.2d 266 (2007).

"General Statutes §§ 54-82c and 54-82d provide a statutory method by which an inmate of a Connecticut penal institution who has a detainer placed against him can request and receive an expedited disposition of pending charges. The inmate must be serving a sentence at that time in order to have the procedure available to him. . . . Eligible inmates are entitled to a trial within 120 days or to a dismissal of the pending charges, if they follow the procedure outlined in the statutes. . . . If the procedure is complied with and the case is not assigned for trial within 120 days, then the charges must be dismissed. . . . *The trial court may, however, toll the 120-day period by granting, for good cause shown, any necessary or reasonable continuance.*" (Citations omitted; emphasis added; internal quotation marks omitted.) *State* v. *Toste*, 198 Conn. 573, 585–87, 504 A.2d 1036 (1986).

The start date for calculating days for the defendant's speedy trial motion was February 2, 2005. See *State* v. *Springer*, 149 Conn. 244, 250, 178 A.2d 525 (1962) (completed delivery of request for trial and information concerning confinement starts 120 day period). Accordingly, absent any excludable delay, pursuant to the 120 day limit, the start of the defendant's trial would have been June 1, 2005.

The defendant argues that the delay from May 25 through July 7, 2005, occasioned by his competency examination and the proceedings related to it, amounting to forty-four days, was erroneously calculated by the court as excludable delay in regard to his speedy trial motion. He makes two arguments in support of this contention.

First, the defendant argues that the entire delay occasioned by the examination and proceedings related to his competence was unnecessary, and, therefore, the court erroneously included this delay in its calculations

of excludable time for speedy trial calculations. The defendant asserts that he opposed the competency examination to the court at the May 25, 2005 hearing. As such, it was not a personal request of the defendant. Therefore, he contends, the court erroneously included the delay in its calculation of excludable time. We do not agree.

This court has concluded that in cases in which "requests for continuances [are] made by defense counsel rather than by the defendant, himself, we find that distinction to be inconsequential. Absent some indication to the contrary, a court is entitled to rely on counsel's representations on behalf of his or her client." (Internal quotation marks omitted.) *State* v. *Jeffreys*, 78 Conn. App. 659, 671–72, 828 A.2d 659, cert. denied, 266 Conn. 913, 833 A.2d 465 (2003). Furthermore, "a court may not rely on the defendant's subjective appraisal of his own capacity." (Internal quotation marks omitted.) *State* v. *Cuesta*, 68 Conn. App. 470, 482, 791 A.2d 686, cert. denied, 260 Conn. 914, 796 A.2d 559 (2002). We conclude that the defendant's opposition to the competency examination is irrelevant for purposes of the court's calculating the excludable delay under the defendant's speedy trial motion.

Second, the defendant argues that the delay occasioned by the examination and proceedings related to his competence was erroneously included in the court's calculation of excludable delay because the requisite proceedings under § 56-54d did not occur within that statute's time constraints.[7] The defendant's speedy trial

[7] General Statutes § 54-56d (d) provides in relevant part: "The examination shall be completed within fifteen days from the date it was ordered and the examiners shall prepare and sign, without notarization, a written report and file such report with the court within twenty-one business days of the date of the order. On receipt of the written report, the clerk of the court shall cause copies to be delivered immediately to the state's attorney and to counsel for the defendant."

General Statutes § 54-56d (e) provides in relevant part: "Hearing. The court shall hold a hearing as to the competency of the defendant no later than ten days after the court receives the written report. . . ."

motion was filed under § 54-82c, however, which provides in relevant part: "For good cause shown in open court, the prisoner or his counsel being present, the court may grant any necessary or reasonable continuance. . . ." General Statutes § 54-82c (a). The record indicates that each continuance granted by the court, which concerned the competency examination of the defendant ordered pursuant to § 54-56d, was for good cause, in open court, with the defendant and his counsel present, thereby meeting the requirements of § 54-82c. Therefore, the delay occasioned by the defendant's competency examination and the related proceedings was determined properly by the court to be excludable from speedy trial calculations under § 54-82c.

Next, the defendant also argues that the tolling of May 25, 2005, ended on June 9, 2005, on the basis of the mistaken belief that the June 9 hearing did not occur. The June 9, 2005 hearing did, however, take place. A continuation until July 1, 2005, was ordered by the court at that hearing. That continuation extended to the next hearing on the record, which was July 7, 2005. As the June 9, 2005 hearing took place in open court with the defendant present, it also falls within the ambit § 54-82c, and the defendant's argument fails.

Last, the defendant contends that the resulting delay from the continuation ordered by the court on July 7, 2005, was erroneously calculated by the court as excludable time. We disagree. At the July 7, 2005 hearing, the court stated that it was prepared to start jury selection the following day. The defendant's counsel, however, requested that jury selection be continued until July 12, 2005. The record shows that this continuance was requested on behalf of the defendant. The record further indicates that the defendant was present when this request was made. We conclude, therefore, that the time period being challenged, from July 7 to 12, 2005, was determined appropriately by the court

to be excludable from speedy trial calculations under § 54-82c.

The jury selection in the present case began on July 12, 2005, which is the effective start of the defendant's trial.[8] Although July 12, 2005, was the 161st day after commencement of the speedy trial calculations, the period of excludable delay, which the court found to be "attributable to initiatives of the defense," amounted to a total of forty-eight days. After a thorough review of the record, we conclude that the court's factual findings of excludable delay were not clearly erroneous. As a result, the excludable delay brings the commencement of the defendant's trial within the ambit of § 54-82c. Therefore, the court properly denied the defendant's motion to dismiss.

## II

The defendant next claims that the court improperly limited his cross-examination of a state's witness and thereby violated his right to present a defense and his rights under the confrontation clause of the sixth amendment to the United States constitution.[9] Specifically, the defendant argues that the court improperly restricted his impeachment of Kelly, a pivotal witness for the state. We do not agree.

The following facts and procedural history are relevant to the resolution of the defendant's claim. Prior to trial, the court ruled on a motion in limine regarding

[8] "For the purpose of the speedy trial rules, commencement of trial means the commencement of the voir dire examination in jury cases . . . ." (Internal quotation marks omitted.) *State v. Green*, 38 Conn. App. 868, 873, 663 A.2d 1085 (1995).

[9] The defendant also asserts that the court's limiting his right to cross-examine Kelly violated his right of confrontation under article first, § 8, of the state constitution. The defendant, however, has provided no independent state constitutional analysis for the claim. In the absence of such analysis, we limit our review to the defendant's federal constitutional claim. See *State v. Robertson*, 254 Conn. 739, 743 n.5, 760 A.2d 82 (2000).

the testimony of Kelly. The court limited the extent of the defendant's right to cross-examine Kelly with reference to his past criminal record. Additionally, during the discussion in chambers with the parties concerning this matter, it was agreed on by the defendant that only *unnamed* felonies committed within the past ten years were to be used in the cross-examination of Kelly. At trial, however, defense counsel broached the subject of the nature of Kelly's felony convictions, asking if any of his convictions were "related to any crimes of honesty . . . ." The state's objection to this question was sustained by the court, and that line of questioning ceased.

As the claim was unpreserved at trial, the defendant seeks review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). "*Golding* is a narrow exception to the general rule that an appellate court will not entertain a claim that has not been raised in the trial court. The reason for the rule is obvious: to permit a party to raise a claim on appeal that has not been raised at trial—after it is too late for the trial court or the opposing party to address the claim—would encourage trial by ambuscade, which is unfair to both the trial court and the opposing party. . . . Nevertheless, because constitutional claims implicate fundamental rights, it also would be unfair automatically and categorically to bar a defendant from raising a meritorious constitutional claim that warrants a new trial solely because the defendant failed to identify the violation at trial." (Internal quotation marks omitted.) *State* v. *DeVivo*, 106 Conn. App. 641, 647, 942 A.2d 1066 (2008).

"Under *Golding*, a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the

claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. . . . The first two *Golding* requirements involve whether the claim is reviewable, and the second two involve whether there was constitutional error requiring a new trial." (Internal quotation marks omitted.) *State* v. *Fagan*, 280 Conn. 69, 89–90, 905 A.2d 1101 (2006), cert. denied, 549 U.S. 1269, 127 S. Ct. 1491, 167 L. Ed. 2d 236 (2007).

The record in the present case is adequate for review, and the claim is of constitutional magnitude, alleging a violation of the defendant's right to confront a witness against him. See *State* v. *Rolon*, 257 Conn. 156, 174–75, 777 A.2d 604 (2001) ("[i]t is well established that a defendant has the right to confront witnesses against him as guaranteed by the confrontation [clause] of . . . our federal . . . [constitution]"). Although we conclude that the defendant's claim is reviewable under the first two prongs of *Golding*, because the alleged constitutional violation does not exist, the defendant's claim fails under the third prong of *Golding*.

The defendant argues that the restriction of the cross-examination of Kelly unduly limited the defendant's impeachment of a pivotal state's witness, thereby violating the defendant's federal constitutional right to present a defense and his rights under the confrontation clause of the sixth amendment. The record clearly indicates that the defendant agreed to limit the discussion of felonies in his cross-examination of Kelly to unnamed felonies. This agreement constituted a waiver of his rights under the confrontation clause. This waiver was made expressly and unambiguously by the defendant through counsel. "A defendant in a criminal prosecution

may waive one or more of his or her fundamental rights." *State* v. *Cooper*, 38 Conn. App. 661, 669, 664 A.2d 773, cert. denied, 235 Conn. 908, 665 A.2d 903 (1995), cert. denied, 517 U.S. 1214, 116 S. Ct. 1837, 134 L. Ed. 2d 940 (1996). "A constitutional right that has been waived at trial cannot be resurrected successfully on appeal . . . by invoking the *Golding* doctrine." *State* v. *McDaniel*, 104 Conn. App. 627, 632, 934 A.2d 847 (2007), cert. denied, 285 Conn. 912, 943 A.2d 471 (2008). Specifically, our Supreme Court has held that "unpreserved, waived claims, fail under the third prong of *Golding* . . . ." *State* v. *Fabricatore*, 281 Conn. 469, 482, 915 A.2d 872 (2007). Therefore, because the defendant has failed to demonstrate that a constitutional violation clearly existed and deprived him of a fair trial, he has failed to satisfy the third prong of the test set forth in *Golding*.[10]

In light of the defendant's express waiver of his rights with regard to the extent of the cross-examination of

---

[10] In the alternative, the defendant seeks review under the plain error doctrine established in Practice Book § 60-5, "which provides in relevant part that [t]he court may reverse or modify the decision of the trial court if it determines . . . that the decision is . . . erroneous in law. . . . The plain error doctrine is not . . . a rule of reviewability. It is a rule of reversibility. That is, it is a doctrine that this court invokes in order to rectify a trial court ruling that, although either not properly preserved or never raised at all in the trial court, nonetheless requires reversal of the trial court's judgment, for reasons of policy." (Internal quotation marks omitted.) *State* v. *LaBrec*, 270 Conn. 548, 559, 854 A.2d 1 (2004).

Moreover, "a valid waiver . . . thwarts plain error review of a claim. [The] Plain Error Rule may only be invoked in instances of forfeited-but-reversible error . . . and cannot be used for the purpose of revoking an otherwise valid waiver. This is so because if there has been a valid waiver, there is no error for us to correct. . . . [W]aiver is the intentional relinquishment or abandonment of a known right." (Internal quotation marks omitted.) *State* v. *Corona*, 69 Conn. App. 267, 274–75, 794 A.2d 565, cert. denied, 260 Conn. 935, 802 A.2d 88 (2002). Therefore, because we conclude that there was a valid waiver by the defendant with regard to his rights under the confrontation clause as to the extent of his cross-examination of Kelly, his claim is not reviewable under the plain error doctrine.

Kelly and the precedents that guide our decision, we cannot say that the alleged constitutional violation clearly exists and deprived the defendant of a fair trial, as required under the third prong of *Golding*. Therefore, his claim fails.

### III

Last, the defendant claims that the court incorrectly denied his motion for a judgment of acquittal because the evidence adduced at trial as a matter of law was insufficient to support a conviction of two counts of sale of narcotics by a person who is not drug-dependent. The defendant specifically argues that the evidence is insufficient to support the fact that he possessed the requisite knowledge to have sold the drugs "knowingly." We disagree.

The following additional facts are relevant to the disposition of the defendant's claim. At trial, Eldridge testified at great length as to the transactions in question. On January 22, 2004, he arrived at the Eagles Cafe at 8 p.m. and encountered Taylor, an individual from whom he had purchased narcotics on previous occasions. Eldridge asked Taylor if he had any "work," a drug reference to cocaine for sale. Taylor responded that he did not and was waiting for the defendant. While waiting for the defendant to arrive, Eldridge and Taylor negotiated a price for the narcotics. Eldridge requested three "forties" of cocaine for $100.

Soon after this conversation, the defendant arrived at the cafe. Taylor and Eldridge approached the defendant and Taylor relayed Eldridge's proposal. Eldridge heard the defendant agree to the negotiated price. Soon after, the defendant left the bar without consummating the deal; however, he returned within thirty seconds to one minute. Once in the bar, Taylor, Eldridge and the defendant "formed a triangle [at the bar], and [the defendant] gave the package to [Taylor], [Taylor] handed it

to [Eldridge]. [Eldridge] took the $100 and gave it to [the defendant]," who then placed the money in his pocket. The package contained one gram of cocaine. Eldridge testified that a similar transaction took place among Taylor, the defendant and himself on February 4, 2004, in the Eagles Cafe. Immediately after, Eldridge asked the defendant about the quality of the cocaine he had just purchased. The defendant replied, "[y]ou're [going to] love it." Immediately following the close of the state's case-in-chief, defense counsel orally moved for a judgment of acquittal as to the two counts of sale of narcotics by a person who is not drug-dependent.

"The standard of appellate review of a denial of a motion for a judgment of acquittal has been settled by judicial decision. . . . The issue to be determined is whether the jury could have reasonably concluded, from the facts established and the reasonable infer-ences which could be drawn from those facts, that the cumulative effect was to establish guilt beyond a reasonable doubt. . . . The facts and the reasonable inferences stemming from the facts must be given a construction most favorable to sustaining the jury's ver-dict." (Internal quotation marks omitted.) *State* v. *Ham-lett,* 105 Conn. App. 862, 866, 939 A.2d 1256, cert. denied, 287 Conn. 901, 947 A.2d 343 (2008).

"Moreover, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multi-tude of facts which establishes guilt in a case involving substantial circumstantial evidence. . . . In evaluating evidence, the [finder] of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The [finder of fact] may draw whatever inferences from the evidence or

facts established by the evidence it deems to be reasonable and logical." (Internal quotation marks omitted.) *State* v. *Lopez*, 280 Conn. 779, 808, 911 A.2d 1099 (2007).

The defendant argues that as a matter of law, the evidence was insufficient to support the element of knowledge under § 21a-278 (b). He contends that the evidence supports beyond a reasonable doubt only that he was present at the time of the transactions in question. Furthermore, he asserts that no evidence adduced at trial supports the conclusion beyond a reasonable doubt that he knew cocaine was being sold by Taylor to Eldridge. Additionally, he contends, there was no evidence presented to support the conclusion beyond a reasonable doubt that he was aware that he was receiving money from Eldridge in return for the drugs given by Taylor. Last, the defendant purports that no evidence presented beyond speculation or conjecture supports the conclusion beyond a reasonable doubt that he acted as a principal or agent in the transaction between Eldridge and Taylor. The state, in contrast, argues that the evidence overwhelmingly supported the challenged conviction. We agree with the state.

At the outset we note that "[t]o prove sale of a narcotic substance, [t]he state [must] prove . . . [beyond a reasonable doubt] that the defendant knowingly sold the substance to another person and that the substance sold was a narcotic." (Internal quotation marks omitted.) *State* v. *Gayle*, 64 Conn. App. 596, 601, 781 A.2d 383, cert. denied, 258 Conn. 920, 782 A.2d 1248 (2001). "The state of mind of one accused of a crime is often the most significant and, at the same time, the most elusive element of the crime charged. . . . Because it is practically impossible to know what someone is thinking or intending at any given moment, absent an outright declaration of intent, a person's state of mind is usually proved by circumstantial evidence . . . and

is, except in rare cases, a question of fact. . . . Intention is a mental process which, of necessity, must be proven either by the statements or the actions of the person whose conduct is being examined. . . . Where there is sufficient evidence to support a reasonable inference that the defendant intended to commit the crime charged, whether such an inference should be drawn is properly a question for the jury to decide." (Internal quotation marks omitted.) *State* v. *Parades*, 35 Conn. App. 360, 373, 646 A.2d 234, cert. denied, 231 Conn. 925, 648 A.2d 166 (1994).

In a three way drug transaction similar to the transactions in the present case, we have found sufficient incriminating evidence to support a jury's finding of guilty of the sale of narcotics. See *State* v. *Green*, 81 Conn. App. 152, 838 A.2d 1030, cert. denied, 268 Conn. 909, 845 A.2d 413 (2004). In *Green*, an undercover officer testified that the defendant exited a building accompanied by a man named Goggins. Id., 159. Goggins approached the officer in his vehicle and completed a drug sale. Id. Goggins then returned to the defendant, handed him the proceeds, and both he and the defendant reentered the building. Id. In *Green*, we concluded that this evidence was supportive of "the jury's finding the defendant guilty of the sale of narcotics . . . as a principal . . . ." Id.

In this case, the evidence is stronger than that which supported the conviction in *Green*. Here, the defendant not only accepted money from a drug sale, but he accepted it from the undercover officer himself immediately after Taylor had transferred the drugs to Eldridge. Moreover, the defendant transferred the drugs to Taylor, in Eldridge's presence, immediately prior to the transaction. Also, the defendant, in a conversation that took place immediately after the February 4, 2004 transaction, remarked to Eldridge about the quality of the

cocaine Eldridge had just purchased. "The jury is entitled to draw reasonable inferences from the evidence before it and, in performing its function, the jury brings to bear its common sense and experience of the affairs of life." (Internal quotation marks omitted.) *State* v. *Ramirez*, 94 Conn. App. 812, 822, 894 A.2d 1032, cert. denied, 278 Conn. 915, 899 A.2d 621 (2006). From the evidence offered by the state, taken in the light most favorable to sustaining the verdict, we cannot say as a matter of law that the jury as the trier of fact could not reasonably have concluded that the defendant knowingly sold the substance to another person and that the substance sold was a narcotic. See *State* v. *Gayle*, supra, 64 Conn. App. 601. We conclude, therefore, that the state presented sufficient evidence that the defendant possessed the requisite knowledge of the sale of narcotics in the present case.

The judgment is affirmed.

In this opinion the other judges concurred.